**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**HANNOVER INSURANCE COMPANY,**

       **Plaintiff,**

**vs.**                                        **Case No. 6:05-cv-576-Orl-19DAB**

**DOLLY TRANS FREIGHT, INC.,**

       **Defendant.**
_____

## ORDER

This case comes before the Court for ruling after an evidentiary hearing before the Court sitting as jury on November 14, 2006.  (*See* Doc. No. 93).

### Procedural Background

This diversity action arises from an insurance contract dispute between the insurer, Plaintiff Hannover Insurance Company ("Hannover"), and the insured, Defendant Dolly Trans Freight, Inc. ("Dolly").  Hannover brought the instant case seeking a declaration that no insurance coverage exists for damages to a tractor-trailer involved in a traffic accident. (*See* Doc. No. 17, filed on June 27, 2005).  Dolly filed a counterclaim against Hannover, claiming that insurance coverage exists for the accident in question and seeking damages for breach of an insurance policy agreement between the parties.  (*See* Doc. No.  23, filed on July 7, 2005).

The following facts alleged in the Amended Complaint are not in dispute.  In the year 2000, Hannover issued Dolly a commercial lines insurance policy covering Dolly's trucking

operations.  The policy became effective on November 1, 2000, and expired on November 1, 2001.  (*See* Doc. No. 21).  Among other provisions, the policy contained a Motor Truck Cargo Coverage Declaration which stated that it was part of the applicable insurance policy and contained the following language: "The term 'Truck' or 'Tractor' includes  trailers and semi trailers, or any combination thereof, *or any unidentified trailer(s) only while attached to a scheduled tractor or truck*." (Doc. No. 21-3, p. 2; Doc. No. 53, ¶ 10; Doc. No. 59,  p.2) (italics added).  On July 13, 2001, Ramon Aviles Reyes was operating a tractor-trailer in Volusia County, Florida in or near the town of Seville, Florida.  (Doc. No. 53; pp. 1-2; Doc. No. 59, pp. 2-3).  At a railroad crossing, such vehicle was involved in an accident with a train.  As a result of the accident, Mr. Reyes was killed, and the tractor-trailer and its cargo were damaged.  (Doc. No. 53, pp. 1, 3; Doc. No. 59; p.2; Doc. No. 63, ¶ 3).

While there was no dispute that Dolly owned the trailer that was involved in the traffic accident, it was discovered that a third party, Patco Transport, Inc. ("Patco"), owned the tractor which Mr. Reyes was operating.[1]  This discovery led to various disputes between Patco, Dolly, and the owner of the train regarding liability and indemnification.  Litigation ensued, and as a result a clerk's entry of default was entered against Dolly on October 31, 2003.[2]  Patco obtained a final default judgment against Dolly on May 7, 2004.[3]  Subsequent to the entry of default judgment and subject to a reservation of rights letter, Hannover

---

[1]     *See, e.g.,* Doc. No. 53, ¶¶ 8-9; Doc. No. 59, p. 2.

[2]     *See Nat'l Railroad Passenger Corp. v. Patco Transport, Inc.*, Case No. 6:02-cv-898-Orl-19JGG, Doc. No. 55.

[3]     *See Nat'l Railroad Passenger Corp. v. Patco Transport, Inc.*, Case No. 6:02-cv-898-Orl-19JGG, Doc. No. 74, 80, 81 *aff'd* by Doc. No. 88.

entered an appearance on behalf of Dolly but was ultimately unable to get the default judgment against Dolly set aside in the Patco litigation.

On May 2, 2006, the Court ruled on the cross motions for summary judgment filed by Hannover and Dolly in the instant case. Dolly's motion for summary judgment was denied by the Court. Hannover's motion for summary judgment was granted in part and denied in part. Summary judgment was granted in favor of Hannover and against Dolly to the extent that Dolly argued the Florida Claims Administration Statute ("FCAS") estopped Hannover from attempting to assert that no insurance coverage existed, because Hannover asserted that there was a complete lack of coverage in the instant case instead of attempting to question or deny coverage based on a particular coverage defense.[4] (*See* Doc. No. 64, filed on May 2, 2006). In all other respects, Hannover's motion for summary judgment was denied, and the case proceeded to bench trial.

## Findings of Fact

After hearing argument, reviewing the evidence presented at trial and the submissions by the parties, and making determinations on the credibility of the witnesses, the Court makes the following findings of fact.

Hannover had notice of the accident in question by July of 2001, and had explicitly denied that coverage existed for the incident by August of 2001. Alberto Mercado, Dolly's President, testified that he notified his insurance agent of the accident in July of 2001 in order to initiate a claim with Hannover for property damage suffered by Dolly in the

---

[4]     In ruling on the Motions for summary judgment, the Court noted that the FCAS was never intended to extend coverage where none existed. *See* Doc. No. 64; *see also* Fla. Stat. Ann. § 627.426(2).

accident.  In addition, on July 17, 2001, Jose Gutierrez, the attorney for Patco, sent Hannover a request for documentation regarding the insured's liability coverage.  (*See, e.g.,* Def. Ex. 2, admitted on November 14, 2006).  On July 18, 2001, Futurity Insurance, Inc. ("Futurity"), the insurance agent which handled Dolly's policy with Hannover, confirmed receiving the Certificate of Insurance and the facts of the accident from Dolly.  (*See* Def. Ex. 3, admitted on November 14, 2006).  On August 13, 2001, Marti Lemieux, who at that time was the claims administrator for BDL Management, Inc., Hannover's claims service, sent a letter to Mr. Gutierrez, confirming the receipt of the request for documentation and unequivocally stating Hannover's position that if the facts were as reported, the liability insurance coverage of the tractor owner (Patco) would be primary for the accident in question.  (Def. Ex. 5, admitted on November 14, 2006).

On August 17, 2001, Marti Lemieux sent a letter to Dolly and Patco expressly denying that any coverage by Hannover existed for the incident in question.  (*See* Def. Ex. 6, admitted on November 14, 2006).  The letter stated that there was no coverage because Dolly did not own the tractor or the trailer involved in the accident.[5]  Finally, Marti Lemieux advised Dolly to contact the owner of the tractor to determine if any coverage existed under the tractor owner's policy.  (*See id.*).  On September 10, 2001, BDL Management sent a letter to Dolly again stating that Dolly's claim had been denied due to a lack of coverage. (Def. Ex. 7, admitted on November 14, 2006).  The letter demanded the return of $2250.00 paid for  "wrecker charges" and requested that the insured make the check payable to Hannover.  (*See id.*).

---

[5]     The parties later stipulated, however, that Dolly did own the trailer involved in the accident.

-4-

Based on these facts, Hannover made an explicit, unequivocal denial of insurance coverage to its insured, Dolly.

Dolly did timely notify Hannover of the Patco lawsuit before a default judgment was entered, and Hannover's inaction was the primary cause of the entry of a default judgment against Dolly.  Hannover's contention that Dolly ignored Patco's motion for default in the Patco litigation is not supported by the facts.  Alberto Mercado testified that he contacted Futurity, his insurance agent for Hannover, by telephone on the same day that he received the motion for default and advised Futurity of the motion.[6]  Mr. Mercado further testified that he called Futurity again one or two additional times, including once on May 7, 2004, after receiving notice that a default judgment had been entered against Dolly.  According to Mr. Mercado, Futurity repeatedly stated to him that Hannover denied coverage and assured him that under Florida law the insurance coverage of the tractor would cover the trailer. Although Mr. Mercado testified that he never contacted Hannover directly, he stated that he believed it was proper procedure for him to contact Futurity, his insurance agent for Hannover, and for Futurity to pass the information on to Hannover.

At trial, Hannover presented evidence that in his affidavit in the Patco case, Mr. Mercado stated that his office failed to forward the initial suit documents in the Patco litigation on to Futurity.  Hannover argued that this evidence contradicted Mr. Mercado's testimony about his later efforts to inform Hannover of the default and default judgment. Contrary to Hannover's assertions, however, nothing in the record, and nothing in Mr.

---

[6]     Mr. Mercado had notified Hannover's agent, Futurity, by telephone on a previous occasion of the accident and was told by Futurity that Hannover did not provide coverage and that Dolly should be covered by Patco's insurance.

Mercado's affidavit in the Patco litigation, refutes the testimony by Mr. Mercado about his telephone contacts with Futurity both before and after the default judgment was entered against Dolly. The record demonstrates that Mr. Mercado, whose highest level of formal education is high school, did not intend to assert in his affidavit in the Patco case that he failed to notify Hannover through Futurity of the clerk's entry of default. The Court finds Mr. Mercado's testimony on this issue to be both credible and uncontradicted.

In addition, Hannover had timely notice of the motion for default judgment prior to the entry of the default judgment from Nicholas Shannin, the attorney for Patco. On April 27, 2004, Mr. Shannin faxed and mailed a letter to BDL Management marked "Urgent."[7] (*See* Def. Ex. 11, admitted on November 14, 2006). In it, Mr. Shannin sought Hannover's participation in the Patco lawsuit, referenced the May 2004 trial date, and stated that his independent investigation indicated that coverage existed for the situation in question. (*See id.*). He concluded the letter by suggesting that BDL contact him immediately "so that a trial and entry of judgment can be averted." (*See id.*). Several court documents, including the third party complaint against Dolly in the Patco case, were attached to the letter. (*See id.*).

Later that day or on the following day, Mr. Shannin and Leo Leonard, a claims administrator for BDL Management, discussed the Patco litigation. The testimony of Mr. Shannin and Mr. Leonard regarding this telephonic meeting conflict regarding the substance of the conversation. Mr. Shannin testified that he told Mr. Leonard that a clerk's entry of default had been entered and that a default judgment was looming over Dolly and would be

---

[7]     The letter was addressed to Marti Lemieux or the Current Claim Handling Administrator at BDL Management. The parties do not dispute that at this time, the claims administrator was a Mr. Leo Leonard.

entered as early as May 3, 2004 if Hannover did not fulfill its obligation to defend Dolly in the Patco case. He further stated that settlement negotiations were going nowhere without the involvement of Dolly and Hannover. Finally, Mr. Shannin testified that he was sure that he did not state to Mr. Leonard that a default judgment had already been entered.

To the contrary, Mr. Leonard testified by way of deposition that Mr. Shannin told him that a default judgment had already been entered against Dolly in the Patco case. (*See* Doc. No. 88-2, filed on November 2, 2006). He further testified that he did not understand the significance of the May 3, 2004 date as he thought Mr. Shannin was referencing a hearing on damages or a settlement hearing pursuant to a default judgment which had already been entered. (*See id*.). However, Mr. Leonard admitted that he was confused when he spoke with Mr. Shannin and that his recollection of the events on April 27th and April 28th was not good. (*See* Doc. No. 88-2, pp. 13, 16, 17-18, 24-25).

The Court finds that Mr. Shannin is the more credible witness and that his testimony regarding his conversation with Mr. Leonard is both truthful and accurate. In contrast to Mr. Leonard's poor recollection of the events, Mr. Shannin's testimony was direct and unequivocal and is supported by the letters he faxed to Mr. Leonard. Mr. Leonard's statement that Mr. Shannin told him a default judgment had already been entered is refuted by Mr. Shannin's testimony and the April 27th letter from Mr. Shannin to Mr. Leonard which specifically stated that Mr. Shannin sought Hannover's participation in order to avoid a trial and the entry of a default judgment. (*See* Def. Ex. 11).

The record is undisputed that Hannover did not begin to provide a defense to Dolly in the Patco case until on or about May 18, 2006, eleven days after the default judgment had

been entered.  Mr. Shannin testified that had Hannover provided Dolly with counsel for its defense on or before the May 7, 2004 trial date, he would have stipulated to a continuance and stipulated to setting aside the clerk's entry of default upon such motion by Dolly.  This evidence is also unrefuted.

## Conclusions of Law

The parties' trial briefs advance several factual arguments which the parties presented at trial.  First, Dolly claims that it gave Hannover notice of the clerk's entry of default on April 27, 2004, yet Hannover failed to timely defend Dolly in the Patco litigation.  (*See, e.g.,* Doc. No. 69, filed on July 12, 2006).  Dolly claims that despite giving Hannover timely notice of the clerk's entry of default, Hannover breached its duty to defend Dolly by failing to act to set aside the clerk's entry of default before a final default judgment was entered.  To the contrary, Hannover argues that the insurance policy at issue clearly and explicitly provides no insurance coverage to Dolly for the incident, and thus that Hannover had no contractual duty to defend Dolly.  Secondly, Hannover argues that Dolly failed to comply with the cooperation clause of the policy requiring it to notify Hannover of pending suits.  Hannover contends that because it has been prejudiced by Dolly's failure to meet its obligations under the policy, judgment should be entered in its favor.  (*See, e.g.,* Doc. No. 70, filed on July 12, 2006).

Based on the evidence presented at trial, the Court finds that the insurance policy in question provided coverage for the July 13, 2001 accident and that Hannover breached the policy by failing to defend Dolly in the underlying Patco litigation.  Secondly, Hannover is estopped under Florida contract law from raising the coverage defense that Dolly failed to

-8-

comply with the cooperation and notification clauses of the policy.  Finally, the Court finds that even if Hannover was not estopped from arguing that Dolly breached the cooperation and notification provisions of the policy, such argument is without merit.[8]

In the instant case, Florida insurance law guides the Court's resolution of the issues raised by the parties.  In Florida, contracts of insurance should receive a construction that is reasonable, practical, sensible, and just.  *Weldon v. All Am. Life Ins. Co.*, 605 So.2d 911, 915 (Fla. 2d DCA 1992).  Terms used in a policy should be read in light of the skill and experience of ordinary people.  *Lindheimer v. St. Paul Fire & Marine Ins. Co.*, 643 So.2d 636, 638 (Fla. 3d DCA 1994).   Insurance policies will not be construed to reach an absurd result.  *Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So.2d 1135, 1140 (Fla. 1998).

Under Florida law, ambiguous language in an insurance contract exclusion is interpreted narrowly and construed in favor of the insured.  *Swire*, 845 So. 2d at 165; *Demshar v. AAACon Auto Trans., Inc.*, 337 So. 2d 963, 965 (Fla. 1976).  In addition, conflicts between the schedules page of an insurance policy and definitions of covered vehicles are ordinarily resolved in favor of the insured.  *American States Ins. Co. v. Dick's Crane Serv., Inc.*, 399 So. 2d 442, 444 (Fla. 5th DCA 1981).  Policy provisions excluding or limiting the insurer's liability are likewise construed more strictly than provisions that provide coverage.  *Purrelli v. State Farm Fire & Cas. Co.*, 698 So.2d 618, 620 (Fla. 2d DCA

---

6.      The standard of proof for civil litigation between private litigants in the federal court system is generally that one party prevails by demonstrating that its position is supported by a preponderance of the evidence.  *See, e.g., Grogan v. Garner*, 498 U.S. 279, 286 (1991).

1997).  Such limiting provisions must also be construed in favor of the insured if they are ambiguous or reasonably susceptible to more than one meaning.  *Deni*, 711 So.2d at 1138.

The rule of liberal construction in favor of the insured, however, applies only when a genuine inconsistency, uncertainty, or ambiguity in the meaning of a provision of the policy remains after resort to the ordinary rules of construction.  *Id*.  In construing an insurance policy, courts should read the policy as a whole, endeavoring to give contract provisions their full meaning and operative effect.  *Auto-Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla. 2000).  Indeed, a single policy provision should not be considered in isolation but instead should be construed according to the entirety of its terms as set forth in the policy and as amplified by the policy application, endorsements, or riders.  *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So.2d 161, 166 (Fla. 2003).  The lack of a definition of an operative term does not, by itself, create ambiguity.  *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So.2d 1072, 1076 (Fla.1998).  Further, ambiguity does not exist merely because an insurance contract is complex and requires analysis to interpret it.  *Swire*, 845 So.2d at 165.

## A.  Coverage

Dolly has demonstrated by a preponderance of the evidence that coverage exists for the accident in question.

At trial, counsel for both parties presented extensive evidence regarding the policy in question, which consists of a policy declarations section, a commercial auto coverage part, a coverage declarations section, an endorsement to the policy, a Truckers Coverage Form, and a definitions section.  (*See* Doc. No. 21-2 to 21-7).  The parties do not dispute that the

policy states that Hannover will pay all sums it is legally required to pay as a result of bodily injury or property damage "caused by an accident resulting from the ownership, maintenance, or use of a covered auto." (Doc. No. 21-4, p. 2). In the Truckers Coverage Form section of the policy, under the heading "Description of Covered Auto Designation Symbols," the document lists a series of numbers, each number corresponding to a separate definition. (Doc. No. 21-4, pp. 1-2). Symbol 41 corresponds with the definition "Any Autos," the least restrictive policy definition available. (Doc. No. 21-4, p. 1). By contrast, Symbol 42 corresponds to "Owned Autos Only," while Symbol 43 corresponds to "Owned Commercial Autos Only." (*See id*.)

On the policy's commercial auto coverage part, Item Two consists of a schedule of coverages. (*See* Doc. No. 21-1, p. 3). Item Two states that coverage applies only to those "autos"[9] shown as "covered autos." (*See id*.). Next to each type of coverage the policy offers is a symbol which corresponds with the symbols in the Truckers Coverage Form. (*See id.*). The policy makes this explicit, stating that "Entry of one or more of the symbols from the Covered Autos Section of the Business Auto Coverage Form shows which autos are covered autos." (*See id.*). Next to the description of the liability, personal injury protection (PIP), and uninsured motorists (UM) coverages provided by the policy, the document lists the number "41," which is defined as "any autos" in the Description of Covered Autos. (*See id.*; Doc. No. 21-4, p. 1).

The policy clearly states that for purposes of liability, PIP and UM coverage, any

---

[9]   "Auto" is defined in the definitions section of the policy as "a land motor vehicle, 'trailer' or semi-trailer designed for travel on public roads but does not include 'mobile equipment.' " (*See* Doc. No. 21-7, p. 1).

autos are covered autos.  Thus the express language of the policy directly contradicts Hannover's position that an accident involving a Patco-owned tractor and a Dolly-owned trailer would not be covered.  While there may have been no coverage for the accident in question had the policy used the more restrictive definitions of a covered auto under Symbol 42 or Symbol 43, Hannover clearly chose to employ the more expansive definition of "any autos" in the instant policy.

On this point, Hannover advanced several arguments at trial which the Court finds unpersuasive.  First, Hannover argued that the definition of "Trailer" in the endorsement to the policy demonstrates that no coverage exists for the incident in question.  The endorsement provides the following:

> B. **"Trailer"** means a trailer or semi-trailer not owned by **you** while in **your** possession under a written agreement in which **you** assume liability for **loss** to that trailer while in **your** possession.

(*See* Doc. No. 21-3, p. 3) (boldface in original).  However, this provision is inapplicable to the instant dispute, as the definition above clarifies which trailers not owned by Dolly would be covered by the policy.  In the instant case, the parties have stipulated that Dolly did own the trailer involved in the accident.  Thus, the endorsement does nothing to change the definition of what constitutes a "covered auto" under the policy.

Furthermore, the endorsement only defines "trailer" as described above for the purposes of the endorsement form.  (*See id.*) ("The following words and phrases have special meaning *throughout this endorsement* and appear in **bold face type** when used.") (italics added, boldface in original).  The endorsement form does not alter the definition of "trailer" as it appears in the rest of the document, and there is no indication that the endorsement was

intended to remove all trailers and semi-trailers from being considered "autos" under the policy.  Hence, Dolly is correct that the more specific language of the commercial auto coverage portion of the policy is more persuasive.

Secondly, Hannover argued that the above-quoted definition of the word "trailer," along with the Cargo Coverage Declaration[10] language, and the Trucker's Coverage form language, further demonstrate that there was no coverage for the accident in question, as Dolly did not own, maintain, or use the covered auto.  This argument is not well taken. Initially, the Court notes that Hannover does not dispute that the auto was "in use" at the time of the incident, but only whether the vehicle in question was a covered auto under the policy.[11]  As stated in the Court's Order denying summary judgment on this issue, the Cargo Coverage Declaration provides a place for the insurer to list a schedule of tractors or trucks which are insured, but the typewritten provision inserted in the instant policy waives the requirement of a schedule of units. (*See* Doc. No. 21-3, p. 2).  Furthermore, the quoted language does nothing to assist the Court in construing what is or is not a "covered auto" under the policy.  Nor, as Hannover contends, is the testimony of Dolly's President, Alberto Mercado, regarding his interpretation of the meaning of the contract persuasive.  While it is true, as Hannover points out, that Mr. Mercado admitted he never intended to cover any of

---

[10]     The Cargo Coverage Declaration states: "The term 'Truck' or 'Tractor' includes trailers and semi trailers, or any combination thereof, *or any unidentified trailer(s) only while attached to a scheduled tractor or truck*." (Doc. No. 21-3, p.2) (italics added).

[11]     The Trucker's Coverage Form states, in pertinent part that the insured will pay all sums it is legally required to pay as a result of bodily injury or property damage "caused by an accident resulting from the ownership, maintenance, or use of a covered auto."  (Doc. No. 21-4, p. 2).

Patco's vehicles with the policy, he also testified that he intended for Dolly's trailers to be covered.

Finally, even if Hannover was correct that the endorsement form or the Cargo Coverage Declaration served to limit insurance coverage for the accident in question, this would at best make the policy ambiguous; the policy would both appear to provide coverage (in the commercial auto coverage part) and not provide coverage (in the endorsement form) for the same incident. In Florida, ambiguous language in an insurance contract exclusion is interpreted narrowly and construed in favor of the insured. *Swire*, 845 So. 2d at 165; *Demshar*, 337 So. 2d at 965. In addition, conflicts between the schedules page of an insurance policy and definitions of covered vehicles are ordinarily resolved in favor of the insured, and a policy's limiting provisions must also be construed in favor of the insured if they are ambiguous or reasonably susceptible to more than one meaning. *American States,* 399 So. 2d at 444; *Deni*, 711 So.2d at 1138. Thus, the Court finds that Dolly has demonstrated by a preponderance of the evidence that coverage exists for the incident in question.[12]

## B. Estoppel

In the instant case, Hannover argued at trial that even if the Court finds that coverage exists for the accident in question, the Court should find that Hannover was prejudiced by Dolly's failure to timely notify Hannover of the underlying Patco litigation under the cooperation and notification clauses of the insurance policy. This argument is not well

---

[12]     Because the Court finds that the vehicle in question was a "covered auto" under the policy, the Court will not address Hannover's alternative argument that if the vehicle was not a "covered auto," the most the policy could do would be to provide excess coverage.

taken, as Hannover is judicially estopped from raising the issue that Dolly breached the insurance policy.[13]

As this case is a federal diversity action, Florida judicial estoppel principles guide the Court's resolution of this matter. *See, e.g., Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257, 1261 (11th Cir. 1988) ("Had this case originated as a diversity action, it appears this court would be bound to apply the relevant state formulation of judicial estoppel.") (abrogated on other grounds, 498 U.S. 279 (1991)).  In Florida, a party is equitably estopped from making a defense or objection that is inconsistent with a position it previously asserted if the prior position was successfully maintained.  *See, e.g., Olin's, Inc. v. Avis Rental Car System of Fla.,* Inc., 104 So. 2d 508, 511 (Fla. 1958); *Smith v. Urquhart*, 176 So. 787, 788 (Fla. 1937); *Grauer v. Occidental Life Ins. Co. of California*, 363 So. 2d 583, 585 (Fla. 1st DCA 1978) (*cert. denied*, 372 So. 2d 468).  The doctrine serves to preclude "a person from maintaining a position inconsistent with another position which is sought to be maintained at the same time or which was asserted at a previous time; and, as a general rule where a person has, with knowledge of the facts, acted or conducted himself in a particular manner, or asserted a particular claim or right, he cannot afterward assume a position inconsistent with such act or conduct to the prejudice of another who has acted in reliance on such conduct."  *See Grauer*, 363 So. 2d at 585 (quoting *United Contractors, Inc. v. United Construction Corp.*, 187 So. 2d 695, 701-02 (Fla. 2d DCA 1966).  The doctrine requires from a party consistency of conduct when inconsistency would work substantial injury to the other party.  *See id.* (quoting *United Contractors*, 187 So. 2d at 702); *see also Bailey v.*

---

[13]     Dolly timely objected at trial to Hannover's attempt to assert and present evidence regarding particular coverage defenses to the policy in question.

*State Farm Mut. Auto. Ins. Co.,* 789 So. 2d 1181, 1183 (Fla. 4th DCA 2001).  It is not necessary for the party against whom estoppel is being sought to have secured a final judgment before the opposing party can be estopped from asserting inconsistent and contradictory positions with respect to the same matter.  *See, e.g., Lambert v. Nationwide Mut. Fire Ins. Co.*, 456 So. 2d 517, 518 (Fla. 1st DCA 1984).

In Dolly's Motion for Summary Judgment, it argued that summary judgment was warranted in Dolly's favor because the Florida Claims Administration Statute ("FCAS") estopped Hannover from denying coverage even if no coverage existed.[14]   Hannover responded that the FCAS was inapplicable to the instant case because the statute only applies when an insurer denies coverage based on a particular coverage defense, and not when an insurer denies coverage based on a complete lack of coverage for the loss sustained.  Thus, Hannover argued, because it did not seek to question or deny coverage based on a particular coverage defense but only asserted that there is a complete lack of coverage for the accident in question, Hannover was entitled to summary judgment.  (*See, e.g.,* Doc. No. 53, pp. 6-8; Doc. No. 63, pp. 2-4; Doc. No. 64, pp. 10-12).  The Court agreed and granted summary judgment in favor of Hannover, holding that because Hannover sought to deny coverage rather than to rely on a particular coverage defense, the FCAS was inapplicable to the case at bar.  *See* Doc. No. 64, p. 12; Fla. Stat. Ann. § 627.426(2); *Doe on Behalf of Doe v. Allstate Ins. Co.,* 653 So. 2d 371, 374 (Fla. 1995).

Having prevailed on the issue of the applicability of the FCAS to the instant case

---

[14]     The FCAS effectively estops an insurer from denying or questioning the availability of insurance coverage under a particular policy based on a particular coverage defense if the insurer fails to first provide certain written notifications to the named insured.  *See* Fla. Stat. Ann. § 627.426(2).

based on the argument that it sought only to assert a complete lack of coverage, Hannover is estopped from now arguing that particular coverage defenses apply which preclude judgment in Dolly's favor. "A party can argue inconsistent positions in the alternative, but once it has sold one to the court it cannot turn around and repudiate it in order to have a second victory." *Continental Illinois*, 998 F.2d 513, 518 (7th Cir. 1993). Allowing Hannover to assert coverage defenses at trial would clearly prejudice Dolly, which was barred by the Court's summary judgment Order from proceeding on its FCAS claims and defenses at trial in the instant case due to the position argues by Hannover that there was no coverage under the policy of insurance for the accident. Thus, the Court finds that Hannover is estopped from raising coverage defenses to the policy in question.

### C.  Notification and Cooperation Clauses

Even if Hannover was not estopped from raising the coverage defenses that Dolly breached its obligations under the notification and cooperation clauses of the policy, the Court finds that Dolly did not breach such obligations. Because Hannover first breached the contract by wrongfully denying coverage that actually exists, Dolly's later alleged breach of the notification and cooperation clauses of the policy is immaterial. Secondly, however, Dolly did not breach the notification and cooperation clauses of the policy. The facts of the case demonstrate that Dolly timely notified Hannover of the Patco litigation before a default judgment was entered against it in 2004, yet Hannover through its own inaction failed to timely act to avoid the entry of such judgment.[15]

---

[15]     Dolly notified Futurity of the accident by telephone on the date it occurred and contacted Futurity on later occasions about the incident prior to the Clerk's entry of default. Futurity's position expressed to Mr. Mercado on each occasion was that there was no insurance coverage of Dolly under its policy with Hannover, but

## 1. Initial Breach of the Contract by Hannover

First, Dolly's duty to further notify Hannover was obviated when Hannover denied that any coverage existed for the incident, which position was asserted by Hannover as far back as 2001.

Florida law is clear that when an insurer first denies coverage that actually exists, the insurer has breached the contract and therefore cannot rely on a contractual provision to claim a defense it could otherwise have raised against the insured.  *See, e.g., Gallagher v. Dupont*, 918 So. 2d 342, 347-48 (Fla. 5th DCA 2005); *Steil v. Florida Physicians' Ins. Reciprocal*, 448 So. 2d 589, 591 (Fla. 2d DCA 1984).  In the instant case, the record is clear that on several occasions Hannover expressly denied coverage for the incident in question after it was timely notified of the claim.  Under Florida law, this wrongful denial of coverage constitutes a breach of the contract of insurance.  *See, e.g., Gallagher,* 918 So. 2d at 347-48.

Hence, because the Court finds that Hannover first breached the contract by wrongfully denying coverage that actually exists, Dolly's later alleged breach of the notification and cooperation clauses of the policy is immaterial.

## 2. No Breach of the Notification and Cooperation Clauses by Dolly

Hannover's contention that Dolly breached the notification and cooperation clauses of the policy is not well taken.  Hannover first argues that its denial of coverage for Dolly's claim for the accident in question is irrelevant to the present action, because Dolly had a separate duty to report the Patco lawsuit to Hannover, which Dolly breached.  The policy provides that:

---

that the insurance of the tractor owner, Patco, would cover Dolly under Florida law..

> a.  In the event of "accident", claim, "suit", or "loss", [the insured] must give us or our authorized representative prompt notice of the accident or "loss" [...]
> b.  Additionally, [the insured] and any other involved insured must [...]
>
>> (3) cooperate with us in the investigation or settlement of the claim or defense against the "suit" [...]

(Doc. No. 21-6, p. 3).  Hannover asserts that this language imposed on Dolly the separate obligation to again report the Patco lawsuit arising out of the incident to Hannover, regardless of any prior correspondence regarding the claim arising from the incident.

Hannover's argument is not persuasive, as requiring the insured to provide another round of notice after the insurer clearly and unequivocally stated that no coverage existed for the incident would amount to requiring the insured to perform a useless act.  Hannover did not deny coverage based on a defect in the claim but instead denied coverage based on Dolly's non-ownership of the tractor, a fact which would remain the same regardless of whether the insured was seeking compensation under a claim or invoking the insurer's duty to defend.  The law is clear that a party is not required to perform a useless act.  *See MX Group, Inc. v. City of Covington*, 293 F. 3d 326, 344 (6th Cir. 2002); *U.S. v. David Boland, Inc.*, Case No. 6:05-cv-549-Orl-19JGG, 2006 WL 2683304, at *6 (M.D. Fla. Sept. 18, 2006).

Even if Hannover's interpretation of the above-quoted clause is correct, the facts of the case demonstrate that Dolly did not breach the notification and cooperation clauses of the policy.  Futurity, Hannover's agent for the policy of insurance, had been notified of the accident when it occurred, was later notified regarding the motion for default filed by Patco, and steadfastly advised Dolly that there was no insurance provided under the Hannover policy.  The subsequent actions of Alberto Mercado, who contacted Futurity after receiving

-19-

the motion for default, and Nicholas Shannin, who contacted Hannover directly about the pending entry of a default judgment, both put Hannover on notice of the clerk's entry of default with sufficient time for Hannover to seek to set aside the entry of default in the Patco litigation.   Furthermore, had Hannover simply appeared in Court on May 7, 2004 and requested relief or additional time to respond to the motion for entry of default judgment, Mr. Shannin would have stipulated to setting aside the clerk's entry of default or in the alternative to a continuance.

Thus, Dolly has proven by a preponderance of the evidence that Hannover was timely notified of the Patco litigation before a default judgment was entered against Dolly in 2004, and Hannover through its own inaction failed to timely act to avoid the entry of such judgment.   Although Hannover made subsequent efforts to seek to have the default judgment set aside, its dilatory conduct, despite having adequate notice of the lawsuit, was the primary cause of the default judgment being entered.   *Compare Burton v. State Farm Mut. Auto. Ins. Co.*, 335 F. 2d 317, 322-24 (5th Cir. 1964) (insurance company not entitled to decline to defend insured where claimant's contentions, if true, demonstrated liability of insured).

## Conclusion

Based on the foregoing, the Court rules in favor of the Defendant, Dolly Trans Freight, Inc., and against the Plaintiff, Hannover Insurance Company.  The Clerk shall enter judgment in favor of Defendant and against Plaintiff for $230,000.00 in damages, plus $2318.20 in Court costs, and $47,027.73 in interest from May 7, 2004 until December 18, 2006, for a total judgment of $279,345.93, for which sum execution may issue.  After entry

of this final judgment, postjudgment interest shall accrue as allowed by law.

**DONE** and **ORDERED** in Chambers in Orlando, Florida this 18th___ day of December, 2006.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record

Clerk of Court